882

*In re* ESTATE OF MARJORIE WILSON, Deceased.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee and Cross-Appellant, *v.* ELMER H. WILSON, Ex'r of the Estate of Marjorie Wilson, Defendant-Appellant and Cross-Appellee.)

Fourth District   No. 15230

Opinion filed May 9, 1979.

Robert W. Cook and William G. Keller, Jr., both of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellant.

William J. Scott, Attorney General, of Springfield (Gail A. Moreland, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
Inheritance tax question.
Stock held in joint tenancy.
Can a resulting trust be imposed and thus avoid the tax?
Yes.
We reverse and remand.

The solitary issue in this case is whether certain assets held in joint tenancy should be included in the taxable estate of a decedent where the surviving joint tenant contends that the decedent held the property on resulting trust for the benefit of the survivor. Marjorie Wilson died July 14, 1973. Subsequently, her husband and surviving joint tenant, Elmer Wilson, was appointed executor under her will and, in that capacity, filed an Illinois inheritance tax return on June 13, 1974. Although he listed certain joint tenancy property on the appropriate schedule, he claimed that it was for informational purposes only and not property which was subject to taxation in Marjorie's estate.

The Attorney General filed objections to the return, arguing that section 1(5) of the Illinois inheritance and transfer tax law (Ill. Rev. Stat. 1973, ch. 120, par. 375(5)) is specifically intended to cover joint tenancy. He then argues that since it was not disputed that the property was held in joint tenancy, the inheritance tax was properly assessed and any extraneous circumstances regarding contributions or equitable ownership are irrelevant.

The executor's position, however, is that, although the property was held in joint tenancy at the time of his wife's death, the court can properly go behind the bald title to consider circumstances which show a resulting trust.

The circuit court agreed with the executor that it could inquire into the question of whether the decedent held the property on resulting trust, but sustained the State's objection to the return because it found that the facts did not support a conclusion that the property was held on resulting trust.

*It is to be particularly noted that these facts are not in dispute since the parties stipulated to them.*

Elmer and Marjorie Wilson were married on October 17, 1931. Marjorie brought no assets into the marriage, was never employed during the marriage, nor did she receive any assets from outside the marriage. At

the time of her death she owned 525 shares of Moorman Manufacturing Company stock individually and another 1,610 shares were registered to "Elmer H. Wilson and Marjorie D. Wilson, his wife, in joint tenancy with right of survivorship." No Moorman stock was registered in Elmer's name alone. The purchase price for the 1,610 shares registered in joint tenancy form was contributed by Elmer and, at the time of purchase, he did not intend to make a gift of any present interest to Marjorie. He did intend for her to receive the stock should she survive him.

Elmer selected the joint tenancy form of registration with the understanding that it would provide for a simpler, less expensive means of transfer to his wife if he predeceased her. He wanted to insure that she received the stock on his death but he did not want her to have any present interest. All dividend checks on the 1,610 jointly titled shares were made payable to "E. H. Wilson." The shares were voted by Elmer alone and Marjorie never signed a proxy for these shares. In contrast, dividend checks on the shares registered in Marjorie's name alone were made payable to her and she always signed proxies for those shares.

The bylaws of the Moorman Manufacturing Company required its directors to own stock in the company. Elmer became a director on May 11, 1943, general manager on October 5, 1943, and continued with the company until 1957. After February 1946, the only shares in the company owned by Elmer were the 1,610 shares registered in joint tenancy. Elmer believed, however, that these shares were his alone.

The majority of the shares of Moorman stock registered in Marjorie's name alone came to her in 1947 from C. A. Moorman, then president of the company. Moorman desired to make a gift of the shares to Elmer. Elmer, in the belief that he was already the owner of a great deal of Moorman stock, requested that Moorman give the stock to Marjorie instead.

A checking account at the Mercantile Trust and Savings Bank, Quincy, Illinois, was originally Elmer's individual account. In 1943 he changed the registration of that account to joint tenancy form with Marjorie. It was stipulated that in so doing it was not Elmer's intent to give Marjorie any present interest but to avoid probate and to make for an easy transfer upon his death.

The remaining assets held in joint tenancy by Elmer and Marjorie included shares of Investors Mutual, Inc., United States Savings Bonds, and a home located in Quincy, Illinois. While the contribution for these assets came solely from Elmer, there is no indication in the stipulation as to his intent at the time of their acquisition.

■■■ The rules with respect to the doctrine of resulting trust were summarized in *Wright v. Wright* (1954), 2 Ill. 2d 246, 118 N.E.2d 280, where the court stated that:

"A resulting trust, characterized as an 'intent enforcing' trust, [citation] is created by operation of law and has its roots in the presumed intention of the parties. [Citations.] A court of equity will raise a resulting trust where land is bought with the money of one person and title is taken in the name of another. [Citations.] It may be paid directly or indirectly to the grantor, and by or for the resulting trust claimant. [Citation.] A resulting trust arises, if at all, at the instant legal title is taken and the title vests. [Citations.] Acts subsequent to the taking of title by the alleged trustee have no bearing upon the question whether a resulting trust was raised. [Citations.]" 2 Ill. 2d 246, 250-51, 118 N.E.2d 280, 283.

■ As to the burden of proof, it rests upon the party who seeks to have a resulting trust imposed and the evidence must be clear, convincing, unequivocal, and unmistakable. *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 240 N.E.2d 677.

■ As noted in *Wright*, a resulting trust may arise where one person pays the purchase price for property which is conveyed to another. When the conveyance is to the payor and a third person in joint tenancy, a rebuttable presumption of gift arises. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) And in Illinois, where a husband purchases assets and title is taken in the name of his spouse, the same rebuttable presumption of gift arises. (*Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435.) This presumption of gift may be overcome only by clear and convincing evidence. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470.) And the presumption is not to be frittered away by mere refinement. *Kartun v. Kartun* (1932), 347 Ill. 510, 180 N.E.2d 423.

Here, the court below ruled that the presumption was not rebutted by the subjective intention asserted and admitted. The court stated that it was neither cited to, nor found, any case that allowed a right of survivorship to be created as a separate and divisible aspect of joint tenancy. Thus, the court ruled that no resulting trust had been raised.

We disagree with this conclusion.

In *Ludwig v. Ludwig* (1952), 413 Ill. 44, 107 N.E.2d 848, the husband purchased a home with his individual funds but title was taken in the joint names of the husband and wife. The parties understood that title was placed in that manner only to avoid probate expense and create a right of survivorship in the wife if she were predeceased by the husband. The husband had purchased the property and paid for all improvements and taxes. The wife had at no time regarded herself as having any interest in the property. On these facts, the supreme court held that a sufficient showing of intent was made so as to rebut the presumption of gift. A resulting trust was therefore imposed as a matter of law.

■ Here, the same intent found to exist in *Ludwig* has been *stipulated* to

by the parties. It is not a mere assertion of intent by Elmer but rather an agreement and stipulation of that fact by the parties. Therefore, we conclude that a resulting trust should be imposed on the jointly titled Moorman stock and the bank account—the only assets to which the intent not to create a present interest was stipulated.

The State's position is that the above analysis is irrelevant to an inheritance tax proceeding. The State argues that the only question is whether the assets are held in the joint names of the decedent and another party. If so held, the State would impose a tax pursuant to section 1(5) of the inheritance and transfer tax law (Ill. Rev. Stat. 1973, ch. 120, par. 375(5)), which provides:

> "Whenever property, real, personal, or mixed, is held in the joint names of 2 or more persons, or is deposited in banks or other institutions or depositories in the joint names of 2 or more persons, and payable to either or the survivor, upon the death of one of such persons, the right of the surviving joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this Act in the same manner as though a fractional part of the property to be determined by dividing the value of the entire property by the number of joint tenants, joint depositors or persons belonged absolutely to the deceased joint tenant, joint depositor or person and had been devised or bequeathed to the surviving joint tenant or joint tenants, person or persons, by such deceased joint tenant or joint depositor by will."

The State's argument is based on the history of section 1(5). In *People v. Varel* (1932), 351 Ill. 96, 184 N.E. 209, the decedent had owned certain stock in joint tenancy with her daughter at the time of her death in May 1929. It was stipulated that prior to January 18, 1929, the daughter owned 1,333 shares of the corporate stock, individually, and decedent 667 shares of the same stock, individually. On that date the parties assigned the stock to themselves as joint tenants with right of survivorship. In the appraisement of the decedent's estate, her interest in the jointly held stock was fixed at one-half its market value. At the hearing on this appraisement the daughter attempted to testify as to the intent of the parties on the date of the transfer into joint tenancy. She also offered to prove that prior to the transfer she had paid for her individual shares and that there was no intent to make a gift. She maintained that the intent was merely to provide for an automatic transfer to the survivor without the necessity of probate administration. Objections to the admissibility of this testimony were sustained.

On appeal, the daughter argued that the court erred in denying her offer of proof. Her contention was that in appraising the interest of the

decedent in this stock it was necessary to examine the contributions of the parties. The supreme court agreed with both of the daughter's contentions.

Paragraph 5 of section 1 of the inheritance tax act then provided that jointly held personal property was to be taxed in the estate of the decedent "as though the whole property to which such transfer relates was owned by said parties as tenants in common * * *." Cahill's Stat. 1927, ch. 120, par. 396; Smith-Hurd's Stat. 1927, ch. 120, par. 375.

Where parties hold as tenants in common and their contributions to the purchase price are unequal, the general rule is that in equity they will be held to own on the basis of their contribution. Thus, the statute in *Varel* required the court to determine the amount of the parties' contributions and "[f]or that purpose, and that purpose only, evidence was admissible." 351 Ill. 96, 101, 184 N.E. 209, 211.

The *Varel* court fully agreed with the State's argument that joint tenants have an equal interest in property so held as well as an equal ability to convey or mortgage their share of the property. However, the court noted that its decision in this case would not destroy joint tenancy law in Illinois because the decision was based on the language of the inheritance tax law rather than traditional joint tenancy concepts. The statute taxed joint tenancy property as though held as tenants in common and this would control over the form of the holding. The court stated that if the legislature intended to tax on the basis of the full value of the property passing to the survivor, it should have used apt and unmistakable language to express that intent. Alternative language that would accomplish that result was then suggested by the court in its opinion.

The following year the legislature acted on the court's suggestion in *Varel* by amending the Act to tax joint tenancy property on a fractional interest basis—the denominator to be determined by ascertaining the number of joint tenants. (*In re Estate of Arundale* (1972), 51 Ill. 2d 311, 281 N.E.2d 657.) In *Arundale* it was held that section 1(5) of the Illinois inheritance and transfer tax law (Ill. Rev. Stat. 1965, ch. 120, par. 375(5)) taxes the transfer of jointly titled assets without the necessity of examining who furnished the consideration for the property. However, there is no indication in the court's opinion that equitable ownership of the joint tenancy property was in issue in that case.

■ In *Arundale*, the court cited to Young, *Tax Incidents of Joint Ownership*, 1959 U. Ill. L.F. 972, for the nature and effect of section 1(5). In his article, Professor Young also states that "[i]f the property were held in the form of a joint tenancy at the death of the donor but the surviving joint tenant could show that the decedent consummated an inter vivos gift of the entire interest (not in contemplation of death), the inheritance tax

would not be applicable. The burden of proof, however, would be upon the survivor." (1959 Ill. L.F. 972, 1012.) Presumably, this result would follow because no beneficial interest would be transferred on the donor's death and substance normally controls over form. This is in accord with the oft-cited proposition that the Inheritance Tax Act is designed to tax the privilege of succeeding to property rights of deceased persons and is imposed on the *beneficial* interest taken by the devisee or legatee, and not the property itself. (*In re Estate of Marcley* (1976), 38 Ill. App. 3d 316, 347 N.E.2d 13.) Thus, reading section 1(5) so as to preclude evidence of the beneficial interest actually held by the decedent would be contrary to the purpose of the Act.

■■ In the present case, the parties stipulated that Elmer Wilson had no intent to create a present interest in his spouse as far as the Moorman stock and the bank account were concerned. His only intent was to create a right of survivorship. Under these circumstances, *Ludwig* allows a resulting trust to be imposed. Therefore, no beneficial interest passed to Elmer Wilson on his wife's death and under the above analysis of section 1(5) no tax is to be imposed on these assets.

Reversed and remanded.

GREEN and TRAPP, JJ., concur.