*In re* ESTATE OF RAYMOND ENGEL, Deceased.—(RAELENE MACIEJEWSKI, Adm'r of the Estate of Raymond Engel, Plaintiff-Appellant, *v.* EMILY ENGEL, Defendant-Appellee.)

Third District   No. 79-520

Opinion filed August 7, 1980.

STOUDER, J., specially concurring.

Louis Olivero, of Peru, for appellant.

Leo J. Schwamberger, of La Salle, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Raymond C. Engel died intestate on September 19, 1977, survived by his daughter, Raelene Maciejewski, as his only heir at law. After decedent's estate was opened, and after Raelene Maciejewski was named

administrator, decedent's mother, Emily Engel, filed a claim for $17,723 against the estate. The claimant alleged that she gave $17,723 to Raymond Engel to hold in trust for her and that the money was never repaid.

At the subsequent hearing on the claim, the evidence established that Emily Engel originally had three joint tenancy savings accounts, one with each of her three sons, Raymond, Elmer, and Harold. After Harold died in 1971, she opened new joint tenancy accounts with Elmer and Raymond, each containing one-half of Harold's account. On March 28, 1977, the two accounts held jointly with Raymond were transferred into a new account in Raymond's name alone, and a short time later the savings accounts held with Elmer were also transferred into one account which Elmer held in joint tenancy with his wife and daughter.

Elmer testified that he and Raymond had a conversation with their mother when she was in the hospital on March 28, 1977, at which time Elmer explained to her that she was going to have to enter a nursing home and that Attorney Gary Gearhart, who was Raymond's personal friend, had advised them to transfer the two accounts held jointly with Raymond into Raymond's name alone. According to Elmer, Raymond told her, "Ma, I will keep this money for you for your care as long as you live." Emily Engel agreed, and later the same day the two brothers arranged the transfer of the two accounts into Raymond's name. On cross-examination, Elmer described an earlier conversation between himself, Raymond, and Raymond's friend, Attorney Gary Gearhart. The two brothers having learned that the county nursing home would not accept a patient who had money, Gearhart advised them to transfer their mother's money into accounts in their names alone.

Elmer also testified:

> "It was Ma's money. Now we merely made a transaction so that we could get my mother into a nursing home * * *. This money was in trust to my mother to be used for her health until the day she dies * * *."

Elmer also testified that the account in his name is similarly to be used for the care and upkeep of his mother. He said, "[T]he purpose of this account was worked out with my mother that I—this would be a trust. This money will be hers. If I were to die, this money which is a trust to her is for her care, for her upkeep, for her health." He also explained that he had a verbal agreement with his wife and daughter that this trust money would return to his mother in the event of his death. Additionally Elmer testified to a conversation with Raelene shortly after Raymond's death when Raelene said that the money was Emily's and "don't worry about it."

Elmer Engel's wife, Mary, testified to a conversation with Raelene Maciejewski immediately after Raymond's death at which time Raelene

said that she knew the money in her father's savings account belonged to Emily Engel and there would be no trouble.

Attorney Gearhart testified at length to his conversations with members of the Engels family. He described the conversation with Elmer and Raymond in March of 1977 when he advised them to transfer their mother's money into their names alone. After Raymond's death, Gearhart talked to Raelene and her husband, explaining that the $16,000 savings account was for the care of Emily Engel. At a later time Gearhart again explained the situation to Raelene, her husband, Ralph Maciejewski, Elmer Engel, and Emily Engel, and told them that the $16,000 should go to Emily and decedent's other assets would go to Raelene. Raelene's husband became upset and both Maciejewskis left the meeting.

Raelene testified in her own behalf, giving a different version of her conversations with Gearhart, Elmer Engel, and Mary Engel. She specifically denied telling anyone that Emily could have the $16,000 savings account.

Emily Engel did not testify because of illness. At the conclusion of the evidence, the trial court found that Emily had placed her money in Raymond's hands, not as a gift, but for her use and benefit during her lifetime, thereby creating a constructive trust. On May 11, 1979, an order was entered allowing Emily's claim for $19,724.64, and a short time later Emily died. Raelene then asked the court to reconsider its judgment in the light of the drastic change in circumstances. The trial court denied the request for reconsideration and stated Emily's right to the money became vested the minute the judgment order was entered. Raelene has perfected this appeal.

■■ The crucial issue, in our view, is whether the finding of ⌐ constructive trust is contrary to the manifest weight of the evidence. Raelene Maciejewski contends that there was absolutely no evidence of fraud or of a fiduciary duty so that the imposition of a constructive trust upon the disputed savings account was legally impermissible. She insists that Illinois courts will impose a constructive trust only where there is fraud or when advantage is taken of a fiduciary relationship. (*E.g., Durkee v. Franklin Savings Association* (1974), 17 Ill. App. 3d 978, 309 N.E.2d 118.) However, we note that in numerous cases the courts have refused to place such a restriction upon the equitable powers of the court and instead have recognized that, where one person has received money which belongs to another under circumstances whereby in equity and good conscience he ought not keep it, recovery will be allowed under a theory of constructive or resulting trust. (*County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, 327 N.E.2d 96; *In re Estate of Ray* (1972), 7 Ill. App. 3d 433, 287 N.E.2d 144. See also *Wright v. Wright* (1954), 2 Ill. 2d 246, 118 N.E.2d 280.) It has also been said that, whether a husband, who

hands over money to his wife, has a resulting interest of equitable nature is purely a question of intention. (*Kartun v. Kartun* (1932), 347 Ill. 510, 180 N.E. 423; *In re Estate of Wilson* (1979), 71 Ill. App. 3d 882, 389 N.E.2d 939; 35 Ill. L. & Prac. *Trusts* §42, at 220 (1958).) The same rule would apply to a transaction between parent and child. *Kartun.*

In those cases where it has been held that either fraud or a fiduciary relationship must be present in order to impose a constructive trust, the fact that one voluntarily acts as an agent for another has been held sufficient to give rise to a fiduciary relationship as a matter of law. *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.

Also instructive are two cases relied upon by the claimant. In *Carlson v. Carlson* (1979), 74 Ill. App. 3d 673, 393 N.E.2d 643, the reviewing court found the evidence of a resulting trust in favor of the ex-wife to be clear and convincing where, after the divorce, the ex-wife conveyed the marital home to her former husband without receiving any consideration in order to put the property beyond the reach of a judgment creditor. The former husband had promised to reconvey the property at her request, but when she later demanded return of title to the home, he refused. The court found that a resulting trust was created by operation of law since there was no intent to confer the beneficial interest along with legal title, and the ex-husband was ordered to reconvey. Similarly, in *Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, a resulting trust was held to have been created in favor of the husband who conveyed his interest in the marital home to his wife to avoid potential liability arising out of an automobile accident, with the understanding that she would reconvey after the statute of limitations had run on the personal injury claim. The court found that the presumption that a gift was intended was overcome by the clear and convincing evidence to the contrary.

██ Illinois courts have recognized that a gift from a parent to a child will be presumed where property is so transferred without consideration, but that such presumption is not conclusive and may be overcome by clear and convincing evidence of a contrary intent. (*Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 240 N.E.2d 677.) In the case at bar, the record is replete with evidence that Emily Engel's money was transferred to Raymond, not as a gift and not for consideration, but for him to hold for her benefit. In fact, there is no evidence to the contrary. The only facts in dispute relate to conversations with Raelene after her father's death. As to the parties' intention at the time the account was transferred to Raymond, we find the evidence sufficient to support the finding of a resulting equitable interest by the trial court. Admittedly Elmer did not describe the transaction in the same language that a lawyer would use, but his meaning was clear. We conclude that a trust was properly impressed upon the $19,724 savings account.

■ Raelene also asserts three other issues for review. First, she claims that the probate division of the circuit court lacked jurisdiction to rule upon the existence of a constructive trust. Her argument overlooks the fact that restrictions upon the jurisdiction of a court hearing probate proceedings were removed with the adoption of the Judicial Article of 1964 (Ill. Const. 1870, art. VI (1964), §9), and "a claim based upon an alleged constructive or resulting trust is within the jurisdiction of a court conducting a probate proceeding, cognizable as a seventh class claim." (*In re Estate of Tarr* (1976), 37 Ill. App. 3d 915, 917, 347 N.E.2d 69, 70.) Clearly Emily's claim was properly within the jurisdiction of the court.

■ Raelene also argues that the claim failed to allege fraud or a fiduciary relationship and thus was insufficient as a matter of law. As noted earlier, such allegations are not always required, and, in any event, claims under the Probate Act need not set out a cause of action as would be necessary for a formal pleading. *In re Estate of Piper* (1978), 59 Ill. App. 3d 325, 375 N.E.2d 477.

Finally Raelene contends that the trial court committed reversible error in allowing Attorney Gearhart to testify to confidential conversations he held first with Raymond and later with Raelene, because this testimony violated the attorney-client privilege. However, whether an attorney-client relationship existed at the time of either conversation was a question of fact since Gearhart stated that he talked to both Raymond and Raelene as a close personal friend without a contractual relationship being established. Furthermore, the supreme court of Illinois has stated:

> "Statements made by clients in the presence of third parties, or of the opposite party and his solicitors, are not of that confidential nature which the client may insist shall not be disclosed by an attorney or solicitor." *Scott v. Aultman Co.* (1904), 211 Ill. 612, 615, 71 N.E. 1112, 1113. See also *In re Estate of Busse* (1947), 332 Ill. App. 258, 75 N.E.2d 36.

■ Likewise, we believe it would have been error to exclude the evidence, because in a resulting trust case evidence which bears directly on the intention of the parties at the time the property was transferred should be considered by the court in determining whether the presumption of a gift was overcome and a resulting trust established. See *Forlenza v. Forlenza* (1970), 119 Ill. App. 2d 399, 256 N.E.2d 42.

For the foregoing reasons, we affirm the judgment of the Circuit Court of La Salle County.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

Although I agree with the result reached by the majority, I believe the result is proper because there was an express trust rather than a resulting or possibly a constructive trust. The trial court based its determination on a finding of the existence of a constructive trust even though there was nothing in plaintiff's statement of claim alleging facts which might support such a theory or any indication that a theory of constructive trust was proposed. Because of the inadequacy of the statement of claim it is indeed difficult to know what legal rights the claimant was asserting and what defense was interposed thereto. However, it does not appear the appellant objected to the sufficiency of the statement of claim, and it seems inappropriate to now decide the case should be reversed because of an inadequate pleading. Such inadequacy does in part explain the confusion in the trial court's determination and the blurring of distinctions between various kinds of trusts demonstrated both in the majority opinion and some of the cases relied on therein.

A resulting trust is created by operation of law and arises out of a presumed intention of the parties as evidenced by their acts and conduct. (35 Ill. L. & Prac. *Trusts* §41 (1958).) Such is not the situation in the case at bar. The pleadings, though vague, specifically state that the money was given to Raymond and Elmer in trust, to be used for Emily's benefit. Further, the majority does not refer to the acts and conduct of the parties in deciding there was a trust. Instead the majority puts its emphasis on the conversations by the family members in which they specifically state that the money was given to them in trust for Emily's benefit. From this testimony I believe that an oral, express trust was created and that it is on this basis that the trial court's judgment should be affirmed.

I also believe it necessary to discuss the fact that the trust was created so that it would appear to the State that Emily Engel had no funds, permitting her to possibly enter a county nursing home, while in actuality she was the equitable owner of those funds. Such a scheme constitutes fraud. Had the scheme been actually carried and the State defrauded, then I believe the court would be unable to enforce the trust. *Carlson v. Carlson* (1979), 74 Ill. App. 3d 673, 393 N.E.2d 643, and *Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, cited by the majority, dealt with conveyances from one party to another to defeat creditors with the understanding there would be a reconveyance when the danger was past. In both cases the court found a resulting trust. However, in neither case did the conveyance result in a fraud being effected. Since the record in the instant case is devoid of any evidence that the State was in fact defrauded, I agree with the majority that these cases are proper precedent for enforcing the trust in the instant case.

However, had the record shown that Emily Engel had entered a

county nursing home and effected a fraud, then I believe the court would not have been able to enforce the trust. "The law will not permit a party to deliberately place his property out of his control for a fraudulent purpose and then, through the intervention of a court of equity, regain the title after his fraudulent purpose has been accomplished, but rather, will leave the parties as it finds them." (*Hanley v. Hanley* (1958), 14 Ill. 2d 566, 152 N.E.2d 879.) If a fraud is effected by the creation of a trust, a court will not become a party to the fraud by enforcing the trust. In the present case, however, no fraud was actually perpetrated and, therefore, the express oral trust should be enforced.