In re Michael L. JOHNSON and Adalee E. Johnson, Debtors.

Richard E. Barber, Trustee, Plaintiff,

v.

Unionbank and Brian K. Johnson, Sr., Defendants.

Dora Lee Johnson, Intervening Defendant.

Bankruptcy No. 98–82378.
Adversary No. 98–8231.

United States Bankruptcy Court, C.D. Illinois.

April 22, 1999.

Richard E. Barber, Galesburg, Illinois, Andrew W. Covey, Peoria, Illinois, for plaintiff.

736

Barry M. Barash, Barash & Stoerzbach, Galesburg, Illinois, for Brian K. Johnson and Unionbank.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court is the motion for summary judgment filed by RICHARD E. BARBER, Trustee (TRUSTEE) against the Defendants, UNIONBANK (UNIONBANK) and BRIAN K. JOHNSON, SR. (BRIAN). After the motion was filed, DORA LEE JOHNSON (DORA), was allowed to intervene as a Defendant. At issue is whether a checking account and three certificates of deposit are property of the bankruptcy estate of the Debtor, MICHAEL L. JOHNSON (DEBTOR), and subject to turnover.

DEBTOR filed a joint Chapter 7 petition in Bankruptcy on June 26, 1998, along with his wife, Adalee E. Johnson. At the time the bankruptcy was filed, the DEBTOR was co-owner of the following accounts at UNIONBANK, along with BRIAN, his brother:

| | |
|---|---|
| Checking account | $ 7,178.72 |
| Certificate of deposit # 1436 dated 01/03/95 | $ 13,393.81 |
| Certificate of deposit # 5146 dated 03/10/95 | $ 33,827.02 |
| Certificate of deposit # 6812 dated 11/17/95 | $ 5,000.00 |

The checking account and certificate of deposit # 5146 were held in the name of the DEBTOR or BRIAN, and certificates of deposit # 1436 and # 6812 were held in the name of the DEBTOR and BRIAN. On various occasions, both the DEBTOR and BRIAN borrowed money from UNIONBANK, pledging accounts as security for the loans, as follows:

| Date | Borrower | Amount | Collateral |
|---|---|---|---|
| 04/08/98 | BRIAN | $ 1,241.55 | # 6812 |
| 04/16/98 | DEBTOR | $ 5,757.58 | # 1436 |
| 06/05/98 | DEBTOR | $ 3,030.00 | # 6812 |
| 07/07/98 | BRIAN | $ 2,530.00 | # 5146 |

The TRUSTEE filed a two-count complaint against UNIONBANK and BRIAN, seeking, under Count I, turnover of the checking account and certificate of deposit # 5146 and under Count II, one-half of the balances in certificates of deposit # 6812

and # 1436, after payment of the outstanding loans. UNIONBANK and BRIAN answered the complaint, asserting that the funds in the accounts were held by BRIAN and the DEBTOR under the terms of a resulting trust with their mother, DORA, and were not property of the bankruptcy estate. DORA was permitted to intervene.

The TRUSTEE filed a motion for summary judgment, arguing that § 3 of the Illinois Trust and Payable on Death Accounts Act (STATUTE) abrogates the common law of resulting trusts, precluding the raising of that affirmative defense by the Defendants. Section 3 provides:

Trust Account Incidents. If one or more persons opening or holding an account sign an agreement with the institution providing that the account shall be held in the name of a person or persons designated as trustee or trustees for one or more persons designated as a beneficiary or beneficiaries, the account and any balance therein which exists from time to time shall be held as a trust account and unless otherwise agreed in writing between the person or persons opening or holding the account and the institution:

(a) If two or more persons are designated trustees of the account, as between them they shall hold the account and all balances therein which exist from time to time as joint tenants with right of survivorship and not as tenants in common;

(b) Any trustee during his or her lifetime may change any of the designated beneficiaries without the knowledge or consent of the other trustees or the beneficiaries by a written instrument accepted by the institution;

(c) Any trustee may make additional deposits to and withdraw any part or all of the account at any time without the knowledge or consent of the other trustees or the beneficiaries, subject to the bylaws and regulations of the institution,

and all withdrawals shall constitute a revocation of the agreement as to the amount withdrawn; and

    (d) Upon the death of the last surviving trustee the person designated as the beneficiary who is then living shall be the sole holder of the account, unless more than one beneficiary is named and then living in which case said beneficiaries shall hold the account in equal shares as tenants in common. If no beneficiary is then living, the proceeds shall vest in the estate of the last surviving trustee.

205 ILCS 625/3. This provision has been in effect since January 1, 1986. Interpreting the STATUTE to require all trust accounts to be in writing, the TRUSTEE contends that the accounts at issue here cannot be trust accounts since there is no written agreement between the DEBTOR and BRIAN, and UNIONBANK. The TRUSTEE argues that even if the accounts are held in trust, because there is no written agreement, the STATUTE provides that the trust is revocable and he therefore has the right to withdraw the balances on demand.

    The TRUSTEE reads too much into the STATUTE. A similar provision was contained in the Illinois Savings and Loan Act (ACT) for many years. Prior to the ACT's amendment in 1985, § 770(a) and (b) provided:

    (a) If two or more persons opening or holding a withdrawable capital account shall execute a written agreement with the association or federal association providing that the account shall be payable to any or the survivor of them, the account, and any balance thereof which exists from time to time, shall be held by them as joint owners with right of survivorship and, unless otherwise agreed, any payment by the association or federal association to any of such persons shall be a complete discharge of the association's or federal association's obligation as to the amount so paid. A pledge of such account by any holder or

holders including minors authorized to withdraw amounts from such accounts shall, unless otherwise specifically agreed, be a valid pledge and transfer of the account and shall not operate to sever or terminate the joint and survivorship ownership of all or any part of the account.

    (b) If one or more persons opening or holding a withdrawable capital account shall execute a written agreement with the association or federal association providing that the account shall be held in the name of such person or persons as trustees for one or more persons designated as beneficiaries, the account and any balance thereof which exists from time to time, shall be held as a trust account and unless otherwise agreed between the trustees and the association or federal association:

    (1) Any such trustee during his lifetime may change any of the designated beneficiaries by a written direction accepted by the association or federal association; and

    (2) Any such trustee may withdraw or receive payment in cash or check payable to his personal order and any payment or withdrawal shall constitute a revocation of the agreement as to the amount withdrawn; and

    (3) Upon the death of the last surviving trustee the person or persons designated as beneficiaries who are living at the death of the last surviving trustee shall be the holders of the account (as joint owners with right of survivorship if more than one) and any payment to the holder or any of such holders shall be a complete discharge of the association's or federal association's obligation as to the amount so paid.

Ill.Rev.Stat. ch. 32, § 770(a) and (b).

    In *Estate of Roth v. Roth,* 96 Ill.App.2d 292, 238 N.E.2d 607 (2d Dist.1968), the mother established four savings accounts at three savings and loan associations,

placing the accounts in her name and the names of her two sons, Henry and John, as joint tenants with right of survivorship. It was not disputed that when the mother placed the funds in the joint accounts, they were to be used for her support during her lifetime, and upon her death the funds were to be divided equally among her children in order to avoid lengthy probate proceedings. Thereafter, the mother had a heart attack and resided with and was cared for by Henry. Testimony was adduced that the mother then told others that she wanted Henry and another son to share the money. After her death, Henry withdrew the funds from the accounts. The administrator of the mother's estate sought recovery of the proceeds of the accounts as property belonging to the decedent. The trial court directed Henry to pay over the proceeds to the administrator of the estate.

On appeal, the court rejected Henry's contention that he was the owner of the funds by reason of an absolute gift prior to his mother's death, but held that the evidence established a trust of the funds to which the administrator had no claim. In resolving these issues, the court stated:

The creation of joint accounts in regard to banks and savings and loan associations is expressly governed by statute, to wit, Ill.Rev.Stat.1955, Ch. 32, Sec. 770, as amended, which contains broad and comprehensive (sic) provisions for the creation of rights of survivorship in the case of capital accounts. By statutory provisions referred to, the Legislature has expressly provided for the creation of survivorship accounts in savings and loan associations and has prescribed the method by which accounts can be set up. It is not contested that the joint accounts in the case at bar met the statutory provisions of the statute.

Although joint ownership is set up in conformity with statutory provisions, a court of equity is not thereby foreclosed from looking behind the form of transaction and determining questions of the real and beneficial interest as between the parties. Intent is still held to be controlling, but when the parties have expressed their intent by written agreement by clear and definite terms, the contract cannot be varied or altered unless there is clear and convincing evidence that a gift was not intended. *Frey v. Wubbena*, 26 Ill.2d 62, 70, 185 N.E.2d 850 (1962).

The court in *Murgic v. Granite City Trust & Sav. Bk.*, 31 Ill.2d 587, on page 591 202 N.E.2d 470, on page 472 (1964), said:

'We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement.'

Applying the foregoing principles to the original account, we come to the conclusion that the presumption of donative intent of the [mother], in creating the joint account was not overcome, but that a gift was intended to all her children as to any of the monies in the account upon her death. The decedent parted with exclusive dominion and control over the subject of the gifts when she voluntarily placed ownership in herself and others through survivorship arrangements. The testimony as to her desires and intentions did not make the gifts void as testamentary dispositions. (Citations).

The joint tenants, to-wit, [Henry and John], accepted the funds as fiduciaries with an obligation arising out of the confidence reposed in them by their mother to faithfully follow her instruction. We find that the funds in question withdrawn by [Henry] become impressed with that resulting trust. (Citation).

In *Hanley v. Hanley,* 14 Ill.2d 566, 571, 152 N.E.2d 879, 882 (1958), the court said:

'A resulting trust arises by operation of law and is founded on the presumed intent of the parties ascertained from their acts and attendant facts and circumstances, and usually comes into existence where one person furnishes the consideration, or an aliquot part thereof, for the purchase of property while the title is taken in the name of another \*\*\*, and it arises, if at all, at the instant legal title is taken and vests \*\*\* Acts of the alleged trustee or equitable owner subsequent to the taking of the title, have no bearing upon the question of whether a resulting trust was raised \*\*\* to justify the declaration of such trust, the evidence must be clear, convincing, and unmistakable \*\*\*.'

Further, in determining whether the requirements for a resulting trust are present, it is proper to take into account the family relationship of the parties and the informal character of their arrangement. (Citation).

Thus, a nearly identical statutory provision, under a related act, was not construed as contended by the TRUSTEE. Earlier cases decided under the ACT reveal that the purpose of these provisions is to specifically authorize the establishment of trust accounts or payable on death accounts, which are essentially testamentary dispositions, and would, if not specifically authorized, run afoul of the requirements of testamentary dispositions as set forth in the Statute of Wills. *LaPierre v. Kalergis (In re LaPierre's Estate),* 20 Ill.App.3d 429, 314 N.E.2d 309 (1974).

The idea that the STATUTE, unaccompanied by any elaborating legislative history, abrogates the longstanding law of resulting trusts holds no credence. In a recent pair of cases involving a dispute over bank funds between the probate estate of the former leader of a religious group and the group's successor, the court easily rejected the contention that the contract between the bank and the depositor was conclusive as to ownership of the accounts, noting:

For over a century the United States Supreme Court has ruled that courts may exercise their equitable powers to determine the beneficial or equitable ownership of a bank account. In *National Bank v. Insurance Company,* 104 U.S. 54, 66, 26 L.Ed. 693 (1881), the Court stated: "But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, To whom in equity does it beneficially belong?" (Accord, *Union Stock–Yards Bank v. Gillespie,* 137 U.S. 411, 422, 11 S.Ct. 118, 122, 34 L.Ed. 724 (1890).) .... *See also* Michie, 5 Banks and Banking § 79, at 217 (1950)(". . . the true ownership of a deposit may be proved to be in another than the person in whose name it is made.").

*Matter of Estate of Muhammad,* 123 Ill. App.3d 756, 463 N.E.2d 732, 79 Ill.Dec. 178 (1984); see also *In re Estate of Muhammad,* 165 Ill.App.3d 890, 520 N.E.2d 795, 117 Ill.Dec. 444 (1987) (appeal after remand). In addition, the TRUSTEE's reliance on cases decided under Pennsylvania law is neither sound nor appropriate. The TRUSTEE notes himself that the Pennsylvania statute at issue in *In re William H. Vaughan & Co., Inc.,* 52 B.R. 701 (Bkrtcy. E.D.Pa.1985), *aff'd* 63 B.R. 438 (E.D.Pa. 1986), specifically provided that an irrevocable trust could be proved by clear and convincing evidence in the absence of a writing, and the court in that case held that the creditor fell far short of proving that the debtor intended to create an irrevocable trust in its favor.

■ The TRUSTEE next argues that the pledging of the certificates by the DEBTOR and BRIAN to secure four personal loans, precludes the existence of a resulting trust. The TRUSTEE cites no authority in support of his position. By this Court's own research, it would appear

that this fact alone is not conclusive, but is a fact to be considered in determining whether DORA transferred her beneficial interest in the funds to her sons for their use. *In re Estate of McCormick*, 262 Ill. App.3d 163, 634 N.E.2d 341, 199 Ill.Dec. 502 (1994).

■ The TRUSTEE also contends that even if a trust account was secretly formed, it is invalid against him, as the Chapter 7 TRUSTEE. At issue is whether a trustee may avoid the equitable interest of the resulting trust beneficiary pursuant to his "strong-arm" avoidance powers under § 544(a) of the Bankruptcy Code, 11 U.S.C. § 544(a). Under § 544(a), the bankruptcy trustee is given, as of the filing of the bankruptcy petition, the status of, and thus the power to avoid transfers that would otherwise be avoidable by a hypothetical judicial lien creditor or a hypothetical bona fide purchaser of real property from the debtor. DORA argues that the TRUSTEE steps into the shoes of the DEBTOR and can attain no greater rights than he had.

The TRUSTEE relies on *Matter of Teranis*, 128 F.3d 469 (7th Cir.1997), decided under Wisconsin law. In that case, the Chapter 7 Trustee sought authority to sell a condominium titled in the name of the debtor and her mother, and the mother objected to the sale, claiming that she was the sole owner of the property. The Seventh Circuit Court of Appeals rejected the mother's contention that she could prove full ownership of the property, finding her reliance on cases which dealt only with the rights *inter sese* of co-tenants inappropriate. The court stated:

[E]ven though her name is on the deed as owner, [the debtor] wants to claim that the property is a gift, and, moreover, a future gift, so that it cannot be taken by her creditors. Despite [the mother's] argument to the contrary, it does not matter whether she did or did not intend to give one half of the condominium to [the debtor] at the signing of the deed or all of it at her, [the moth-

er's], death; the fact remains that [the debtor's] name is on the deed now.

Third parties, be they prospective buyers or creditors, cannot be expected to investigate the possibility of unequal ownership, as [clarifying Wisconsin case law] made clear; they can rely upon the face of the deed indicating that each joint tenant has an equal interest in the property. (Citation). [The Chapter 7 Trustee] relied on the deed to ascertain [the debtor's] ownership of the condominium. The district court did not err in finding that [the debtor] is a coequal owner of the condominium.

Giving the court's comments a broad interpretation, the TRUSTEE contends that the same rule applies to personal property. The reasoning of the court in *Teranis* might be applicable here if this dispute were only between the TRUSTEE and BRIAN, and BRIAN was asserting more than his aliquot share. But, those are not the facts and *Teranis* has no bearing. The court in *Teranis* determined the rights of the parties under Wisconsin law, and did not discuss the law of resulting trusts.

■ Under § 541(a)(1) of the Bankruptcy Code, the filing of a petition in bankruptcy creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Notwithstanding the broad interpretation given this definition of property of the bankruptcy estate, a debtor's interests and rights are not expanded upon the filing of a bankruptcy petition. Under § 541(d), where the debtor holds bare legal title without any equitable interest, the bankruptcy estate acquires only that bare legal title without any equitable interest. Because a resulting trust arises, if at all, when legal title is taken, the beneficial interest is not subject to the avoiding powers of the bankruptcy trustee. *In re Waner Corp.*, 146 B.R. 973 (Bkrtcy.N.D.Ill. 1992).

The TRUSTEE also contends that in the absence of any allegations of wrongdoing on the part of the DEBTOR or BRIAN, DORA cannot claim the funds under a theory of constructive trust. Relying on the recent case of *Frederickson v. Blumenthal*, 271 Ill.App.3d 738, 648 N.E.2d 1060, 208 Ill.Dec. 138 (1995), DORA argues that Illinois law no longer precludes imposition of a constructive trust in the absence of wrongdoing. It is true that a smattering of appellate court decisions have contained such statements, blurring the distinction between the theories of constructive and resulting trusts. *See In re Estate of Engel* (1980), 87 Ill.App.3d 273, 408 N.E.2d 1134, 42 Ill.Dec. 425 (1980). Other recent decisions adhere to the rule that the remedy is not available in the absence of allegations of wrongdoing. *Schultz v. Schultz*, 297 Ill.App.3d 102, 696 N.E.2d 1169, 231 Ill.Dec. 598 (1998); *Peddinghaus v. Peddinghaus*, 295 Ill.App.3d 943, 692 N.E.2d 1221, 230 Ill.Dec. 55 (1998); *In re Estate of Vogel*, 291 Ill. App.3d 1044, 684 N.E.2d 1035, 226 Ill.Dec. 39 (1997). Because this Court has determined that the TRUSTEE's motion will be denied, and the matter will proceed to trial, this Court will defer ruling on this issue until the evidence has been presented.

This Opinion is to serve as findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.