### In the Matter of Linnera DAVENPORT, Debtor,

**Linnera Davenport, Plaintiff,**

v.

**S.I. Securities, Defendant.**

Bankruptcy No. 01–B–03001.
Adversary No. 01–A–00467.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 1, 2001.

---

Nora E. Zuckerman, Legal Assistance Foundation, for Plaintiff.

John W. Stanko, Jr., Flamm & Teibloom, Ltd., Chicago, IL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor, Linnera Davenport ("Davenport"), initiated an Adversary Complaint charging S.I. Securities ("S.I.") with violating the automatic stay provisions under 11 U.S.C. § 362 for seeking a tax deed following tax sale to it of her residence. S.I. answered that it was not subject to the automatic stay because: (1) Davenport was not the record owner of property that was the subject of its application for a tax deed; and (2) even if Davenport owned the property, S.I., as a tax purchaser, was not a creditor and therefore was not subject to the automatic stay. At trial Davenport offered evidence to show that she had an equitable interest in her residence by virtue of a pre-bankruptcy resulting trust. Therefore she asserted that the property was and is part of her estate and hence is protected by the stay. S.I. opted to rely on its answer and at trial did not present any evidence. The Court now makes and enters Findings of Fact and Conclusions of Law on which judgment will enter for Plaintiff.

### FINDINGS OF FACT

1. Davenport resides at 7758 S. Calumet Avenue in Chicago, Illinois. She has lived in this home since approximately 1960 when she and her late husband purchased the home as joint tenants. Upon her husband's death in 1984, Davenport became the sole owner of record of the home which was her only substantial asset.

2. S.I. is a partnership doing business in Illinois.

3. Shortly after her husband's death, Davenport suffered a series of strokes and became unable to care for herself. She became increasingly dependent on the assistance of her daughter, Ann Frierson ("Frierson"), to manage her daily affairs.

4. On October 30, 1992, Davenport executed a power of attorney to Ann Frierson which was recorded on May 25, 1993.

5. Also on May 25, 1993, Davenport executed a quitclaim deed transferring title to her residence to Frierson. The quitclaim deed was prepared by Frierson after a social worker informed her that her mother might lose her home if she had to enter a nursing home. Frierson did not consult an attorney prior to preparing the quitclaim deed.

6. Davenport did not intend to transfer her entire estate to Frierson, nor did Frierson intend to take her mother's ownership interest for herself. Instead, the parties thought they were creating a joint tenancy whereby each would hold an undivided half-interest in the residence.

7. Notwithstanding the parties intentions, the quitclaim deed was recorded on May 26, 1993 and Frierson thereby became the record owner of the residence.

8. The 1996 real estate taxes on the residence at 7758 S. Calumet Avenue were sold to S.I. on February 4, 1998.

9. S.I. filed a petition for tax deed for the property in September 2000 in the Circuit Court of Cook County. According to both parties, the last day to redeem the taxes was January 31, 2001.

10. On January 30, 2001, Davenport filed a Chapter 13 Bankruptcy petition. Davenport's bankruptcy schedules showed an equitable interest in the property at 7758 S. Calumet Avenue.

11. On February 18, 2001, S.I. filed a petition for tax deed in the Circuit Court of Cook County case.

12. In March 2001 S.I. was notified of Davenport's bankruptcy.

13. On March 26, 2001, Davenport paid in full the real estate taxes that were due to the Clerk of Cook County, Illinois.

14. On April 16, 2001, S.I. motioned the state court to expunge the purported redemption of the back taxes and for the continuation of the proceedings to grant S.I. a tax deed.

15. Davenport filed an amended Chapter 13 Plan on May 24, 2001. Davenport's plan provides in relevant part:

> The lien of S.I. Securities, holder of a certificate of purchase for unpaid taxes, will be satisfied by payment to the Clerk of Cook County of the amount needed to redeem the property from the tax sale; upon payment of such sums to the Clerk of Cook County, S.I. Securities, its successor or assignee, will surrender the certificate of purchase to the Clerk of Cook County in exchange for said funds. If S.I. Securities, its successor or assign-

ee, claims that it is entitled to payment in excess of those amounts, it shall file a claim no later than June 10, 2001.

16. S.I. received a copy of Davenport's plan but chose not to object or to file any claim in Davenport's bankruptcy. Instead, S.I. refused to relinquish its tax certificate and continued to press its application for tax deed in state court.

17. Davenport's plan was confirmed on June 22, 2001.

### CONCLUSIONS OF LAW

A. *Davenport's residence was a part of her estate when she filed for bankruptcy.*

An estate is created at the commencement of a bankruptcy which is comprised of all legal and equitable interest of the debtor. 11 U.S.C. 541(a)(1); *Matter of Carousel International Corp.*, 89 F.3d 359, 362 (7th Cir.1996).

█ Federal law determines whether interest claimed by debtor is property of the estate, but Illinois law determines whether and to what extent debtor has a legal or equitable interest in the property at the commencement of the bankruptcy. *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir.1993) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

█ Under Illinois law, where one obtains and retains property of another under circumstances where equity demands that he or she should not keep it, a finding of resulting trust or imposition of constructive trust may under some circumstances enable recovery of the property for its rightful owner. *In re Estate of Wallen*, 262 Ill.App.3d 61, 199 Ill.Dec. 359, 633 N.E.2d 1350, 1361 (1994).

█ Resulting trust are intent enforcing devices that arise by operation of law

and the presumed intent of the parties distilled from their conduct. *Fender v. Yagemann*, 29 Ill.2d 205, 193 N.E.2d 794, 796 (1963); *Judgment Services Corp. v. Sullivan*, 321 Ill.App.3d 151, 254 Ill.Dec. 70, 746 N.E.2d 827, 831 (2001). What distinguishes resulting trust from constructive trust is that the former is focused solely on the intent of the parties while the latter is imposed irrespective of the parties intent. *Bozeman v. Sheriff*, 42 Ill.App.3d 228, 355 N.E.2d 624, 626 (1976). Resulting trust arise by operation of law and are generally created where an express trust fails, or where an express trust terminates prior the exhaustion of the trust estate, or where one person pays for property and another takes title. *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill.App.3d 370, 208 Ill.Dec. 455, 649 N.E.2d 511, 519 (1995); *See Matter of Engel*, 87 Ill.App.3d 273, 42 Ill.Dec. 425, 408 N.E.2d 1134 (1980) (resulting trust where son holds funds given to him by his mother in his bank account); *Carlson v. Carlson*, 74 Ill.App.3d 673, 30 Ill.Dec. 607, 393 N.E.2d 643 (1979) (resulting trust where wife puts home in husband's name to avoid creditors). Resulting trust vest at the time of conveyance or not at all. *Fender*, 193 N.E.2d at 796. The burden of proof to establish such trust is on the party claiming a resulting trust, and the evidence must be clear and convincing; if doubtful, or susceptible to other reasonable interpretation, the evidence is insufficient to show a resulting trust. *Id.* While authority in this Circuit holds that a constructive trust cannot be imposed in bankruptcy because rights must be found under Illinois law as of the date bankruptcy is filed, *In re CL Furniture Galleries, Inc.; Stevens v. Century Furniture* Co., No. 95 C 50103, 1995 WL 756853, at *8 (N.D.Ill. Dec.20, 1995), the logic of that decision does not apply to finding that a resulting trust existed prebankruptcy. *Fender*, 193 N.E.2d at 795 (resulting trust arises at conveyance).

There are several rebuttable presumptions concerning possible resulting trusts. *See Judgment Services*, 254 Ill. Dec. 70, 746 N.E.2d at 831. It is generally presumed that when a husband gives title to property to his wife, the conveyance is a gift. *Id.* Likewise, a conveyance from a parent to a child is presumed to be a gift because the child is the natural recipient of the parent's property. *Id.* But those presumptions are factual presumptions which may be rebutted by clear and convincing evidence. *Scanlon v. Scanlon*, 6 Ill.2d 224, 127 N.E.2d 435, 439 (1955) (stating that it has been uniformly held that a gift by a parent of his or her entire estate to a child as an advancement is unreasonable); *Engel*, 42 Ill.Dec. 425, 408 N.E.2d at 1137; *Carlson*, 30 Ill.Dec. 607, 393 N.E.2d at 645. It is the province of the trial court to weigh whether the evidence is sufficient to overcome such presumptions. *Judgment Services*, 254 Ill.Dec. 70, 746 N.E.2d at 832.

Application of the forgoing principles to the unrebutted evidence presented by Plaintiff shows that a resulting trust arose in favor of Davenport at time of the conveyance of May 25, 1993. The instant case is analogous to three cases earlier cited where the courts found a resulting trust in favor of those who transferred property under circumstances which showed an intent to retain a beneficial interest in the property. *Engel*, 87 Ill. App.3d 273, 42 Ill.Dec. 425, 408 N.E.2d 1134; *Carlson*, 74 Ill.App.3d 673, 30 Ill. Dec. 607, 393 N.E.2d 643; *Coates v. Coates*, 64 Ill.App.3d 914, 21 Ill.Dec. 656, 381 N.E.2d 1200 (1978). In each of those cases, as here, the property owner transferred his or her property to a family member in an effort to prevent the loss of

the property. For instance, in *Engel* a mother, who was hospitalized, transferred funds from three joint tenancy bank accounts into individual accounts in the name of two of her sons. *Engel*, 42 Ill.Dec. 425, 408 N.E.2d at 1135. The transfers were made after the mother was advised that she might lose the funds if she had to enter a nursing home. *Id.* After the death of one of her sons, his widow claimed that the funds were a gift. The court rejected this claim and held that the evidence was overwhelming that the mother did not intend to relinquish control over the funds and therefore a resulting trust arose in her favor. *Id.* at 1137–38. One of the key pieces of evidence before the court was the surviving son's testimony that the intent of the transfer was to hold the funds for the benefit of his mother. *Id.* at 1135–36. Similarly, Frierson testified that the purpose of the quitclaim deed was too add her name to her mother's title. (Tr. at p. 35–36). According to Frierson neither she nor her mother intended to transfer the property to the sole ownership of Frierson. *Id.* This testimony was supported by Davenport's own testimony in which she stated that she never intended to give her residence away. (Tr. at p. 56).

As the Illinois Supreme Court has stated, it is unreasonable to assume that a parent will convey absolutely his or her entire estate. *Scanlon*, 127 N.E.2d at 439. There is no evidence here to show that Davenport intended to make a gift of her only substantial asset, her home of 40 years. Other factors which indicate an intent to retain a beneficial interest in the property includes: (1) Frierson did not give any consideration for the property; (2) Frierson's testimony that the quitclaim deed was a mistake is reasonable given that deed was prepared by a non-attorney; (3) Davenport continues to live in the home and all of her income goes to maintain the residence and to payoff the loan which was

secured to pay the back taxes; and (4) there is no evidence that Frierson has ever lived in the residence or that she has acted in any way that shows an ownership interest in the property. For the foregoing reasons, a resulting trust in the residence arose in favor of Davenport. Therefore, the residence was property of her bankruptcy estate.

B.  *S.I. was a creditor of Davenport and as such it was bound by the automatic stay.*

■ Section 101(10)(A) of the Bankruptcy Code provides:

"Creditor" means—

[a] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]

11 U.S.C. § 101(10)(A).

A Claim is defined at § 101(5) as:

(A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) [a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured[.]

11 U.S.C. § 101(5)(A)-(B).

Section 102(2) provides a rule of construction that: "claim against the debtor" includes claim against property of the debtor[.]

11 U.S.C. § 102(2).

Thus, Congress intended the term claim to have the broadest possible interpretation. *Johnson v. Home State Bank*, 501

U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Concomitantly, the term "creditor," necessarily, also has the broadest possible application. For purposes of bankruptcy, any party with a right to payment is a creditor, and a right to payment is any enforceable obligation against the debtor. *Id.* The Supreme Court made this point clear in *Johnson* where the court held that a mortgage foreclosure was a "right to payment against the debtor" and was therefore governed by the Code, even though the creditor did not have a claim against the debtor *in personam.* After reviewing the legislative history of Section 102(2) the court concluded that a creditor who held a claim that was only enforceable against the debtor's property, nonetheless, held a claim against the debtor for purposes of bankruptcy. *Id.* at 85–86, 111 S.Ct. 2150. "[W]e understand Congress' intent to be that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." *Id.* at 87, 111 S.Ct. 2150.

Thus, state court tax proceedings which are generally *in rem* proceedings are proceedings against a debtor in bankruptcy. *In re Stewart,* 190 B.R. 846, 854 (Bankr. C.D.Ill.1996). Under Illinois law, taxes on real property constitute a lien. 35 ILCS 200/21–75. If the taxes are not paid, the county collector may sell the taxes to the highest bidder at a tax sale. 35 ILCS 200/21–190; *See A.P. Properties, Inc. v. Goshinsky,* 186 Ill.2d 524, 529–30, 239 Ill. Dec. 600, 714 N.E.2d 519 (1999) (delineating the tax purchase process). After the taxes are sold the county's lien is extinguished and the tax buyer is given a tax certificate which entitles him or her to payment of the purchase price of the taxes plus an interest penalty. *In re Milne,* 185 B.R. 280, 281 n. 1 (N.D.Ill.1995). If the property owner does not redeem that taxes within the statutorily allowed period, its interest in the property will be extinguished and the tax purchaser may obtain a tax deed on the property. 35 ILCS 200/22–40.

However, during the redemption period the property owner retains all of its legal and equitable interest in the property. *In re McRoberts v. S.I.V.I.,* 184 B.R. 327, 336 (Bankr.S.D.Ill.1995). Therefore, if the property owner files a bankruptcy during the redemption period he or she will be fully protected by the automatic stay. *Id.* But the stay does not toll the redemption period, and the only other protection for the debtor under the Code is the right to extend the redemption period by 60 days under § 108(b). 11 U.S.C. § 108(b); *In re Tynan,* 773 F.2d 177, 179 (7th Cir.1985).

The automatic stay is effective upon the filing of the bankruptcy petition. 11 U.S.C. § 362(a). It bars *inter alia* any act to obtain or interfere with property of the estate (11 U.S.C. § 362(a)(3)), acts to perfect or enforce liens against the property of the estate (11 U.S.C. § 362(a)(4)), or attempts to collect on a claim that arose prior to the filing of the bankruptcy (11 U.S.C. § 362(a)(6)). The stay continues in effect until the property is no longer property of the estate under § 362(c)(1) and also protects property vested in the debtor, pursuant to 11 U.S.C. § 1327(b), after confirmation of a Chapter 13 Plan. 11 U.S.C. § 362(a)(5). Section 362(h) provides damages for "willful" violations of the stay. 11 U.S.C. § 362(h). The term willful means an intentional act, and an act is deemed willful if it is in conscious disregard of the pending bankruptcy. *Stewart,* 190 B.R. at 850.

By applying the foregoing to the present case, it is evident that S.I. violated the stay protecting Davenport's residence. Upon filing of her bankruptcy on January 30,

2001, Davenport's residence, in which she retained her equitable interest during the redemption period, became part of her bankruptcy estate, and as such was protected by the automatic stay provisions of § 362 of the Code. Therefore, S.I. was forbidden from attempting to obtain a tax deed on Davenport's residence without first seeking a modification of the automatic stay under 11 U.S.C. § 362(d). Thus, S.I.'s tax petition filed in violation of the stay in state court post bankruptcy on February 18, 2001, was void. *Hood v. Hall,* 321 Ill.App.3d 452, 254 Ill.Dec. 470, 747 N.E.2d 510, 512 (2001) (citations omitted). This is true even if S.I. was then unaware that Davenport had filed for bankruptcy. *Stewart,* 190 B.R. at 849 (no requirement of notice before stay becomes effective). Likewise, S.I.'s effort to expunge Davenport's redemption of her taxes after it was notified of the bankruptcy was also a nullity. *See* 11 U.S.C. § 362(a)(3)-(a)(4). Davenport's residence continued to be protected by the stay after her plan was confirmed. *See* 11 U.S.C. § 362(a)(5).

S.I. conceded at trial that a holding here that debtor held an interest in the property meant that she received the time extension under § 108(b) of the Code, and therefore she redeemed the property from tax sale within the redemption period. But S.I. argues that it is not subject to the automatic stay or is not bound by Davenport's confirmed plan. It relies on *A.P. Properties* and *In re Mary L. Blue,* 244 B.R. 131 (Bkrtcy.N.D.Ill.2000), opinion withdrawn and reissued at 247 B.R. 748 (Bankr.N.D.Ill.2000) for the proposition that there is no debtor-creditor relationship between a tax buyer and a delinquent property owner.

In *A.P. Properties,* the Illinois Supreme Court held that a tax buyer could not invoke the Uniform Fraudulent Transfer Act (UFTA) to avoid a transfer made by a property owner on the eve of he expiration of the redemption period. The opinion reviewed the definitions of "debtor," "creditor," and "claim" contained within the UFTA, and concluded that a tax buyer was not a creditor because it had no right to payment from the property owner. *A.P. Properties,* 186 Ill.2d at 528–30, 239 Ill. Dec. at 604–06, 714 N.E.2d at 523–25.

*Mary Blue* applied the same reasoning in the context of a bankruptcy case. Judge Barliant's opinion held that a real estate the tax purchaser was not subject to the debtor's confirmed plan because there was no debtor-creditor relationship between the parties. The court then granted the tax buyer's motion to modify the stay. While accepting that an *in rem* obligation can be a claim in bankruptcy as in *Johnson, Mary Blue* distinguished *Johnson* on the basis that the *in rem* interest in that case was a mortgage rather than a tax sale. *Mary Blue,* 247 B.R. at 753. However, as stated above, the holding and reasoning in *Johnson* held that § 102(2) extended to "all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." *Johnson,* 501 U.S. at 87, 111 S.Ct. 2150. Thus, the effort to restrict the holding in *Johnson* is inconsistent with the express language and underlying policy of the Code as articulated in that opinion.

Finally, the facts of *Mary Blue,* are readily distinguishable from the present case. In *Mary Blue,* the debtor failed to redeem the taxes within the requisite period. Thus, under precedent cited by Judge Barliant, debtor lost all interest in the property. Therefore, it was arguable in that case that the tax buyer did not have to seek a modification of the stay before proceeding to obtain a tax deed. Here, in contrast, Davenport made a timely redemption of the taxes while she still held a

interest protectable under the automatic stay, and S.I. failed to seek modification of the stay before taking action in the state proceeding.

The express statutory language of the Bankruptcy Code defines the terms "debtor," "creditor," and "claim" in bankruptcy. Bankruptcy judges are not free to disregard those definitions, but must apply them to carry out the statutory goals. We cannot misapply the holding from *A.P. Properties* so as to disregard application of the Code's definitions to the facts here which clearly show that by its successful bid at the tax sale, S.I. obtained an enforceable obligation secured by Davenport's residence. Thus, there was a debtor-creditor relationship between Davenport and S.I. as defined by the Code.

Under Illinois law, a purchaser of real estate taxes receives the right to remuneration from the property owner within the redemption period, or the right to take title to the delinquent taxpayer's property if not repaid. As the U.S. Supreme Court opinion stated in *Johnson, in rem* actions constitute claims against the debtor in the context of bankruptcy because they are enforceable obligations against the debtor's property. *Johnson,* 501 U.S. at 85, 111 S.Ct. 2150. To hold that there is no debtor–creditor relationship here because the funds supplied by S.I. were channeled through the Cook County Collector would be to exalt form over substance at the expense of the Code's policy of preventing the piecemeal destruction of a debtor's estate.

The instant case is analogous to *Stewart* where Judge Altenberger held that a tax buyer had a lien against the debtor and was therefore in violation of the stay for seeking a tax deed during the redemption period. *Stewart,* 190 B.R. at 854–55. While there is some debate whether the tax buyer's interest is a lien or something

more, that question need not be decided here. *See In re Jackson,* 173 B.R. 637 (Bankr.N.D.Ill.1994, Ginsberg, J) *rev'd and remanded sub nom.* by *Jackson v. Midwest Partnership,* 176 B.R. 156 (N.D.Ill.1994, Plunkett, J). For purposes of the present case it is sufficient to hold that S.I. was and is a creditor as defined by the Code, and as such was subject to dictates of the automatic stay.

Although, S.I. did originally violate the stay, the fact of such violation was by no means without issues both factual and legal. However, at the trial here, once ruling was announced counsel for S.I. agreed that it will turn over its tax certificate to Davenport and will make itself whole by collecting its funds paid in to the Cook County Collector. This will cure all effects of the stay violation. No relief was sought under 11 U.S.C. § 362(h), so that issue need not be decided.

### C.   *Effect of Plan Confirmation*

Another issue in play is the possible implication of the Chapter 13 plan confirmation in light of *Adair v. Sherman,* 230 F.3d 890 (7th Cir.2000). That case held that provisions of a confirmed plan could not be collaterally attacked by a party that failed to object prior to confirmation. *Id.* at 894. However, in light of earlier reasoning, it is not necessary to decide the issue of whether S.I. is bound by Davenport's confirmed plan of which it had notice.

### CONCLUSION

Davenport has sustained her burden of showing that she had a resulting trust interest in her residence when she filed for bankruptcy. Thus, the residence was protected by provisions of the automatic stay, and efforts by S.I. to obtain a tax deed without first seeking modification of the stay were void. Judgment will enter ac-

cordingly, along with injunctive relief requiring remedial steps.