CARMEN CARLSON, Petitioner-Appellee, *v.* JAMES CARLSON, Respondent-Appellant.

First District (4th Division)    No. 78-196

Opinion filed July 26, 1979.

William M. Freeman and Associates, Ltd., of Lansing, for respondent.

Gary L. Blank, of Chicago, for petitioner.

Mr. JUSTICE LINN delivered the opinion of the court:

Carmen Carlson filed a post-judgment petition in the divorce division of the circuit court of Cook County seeking to compel her ex-husband, James Carlson, to reconvey their former marital home to her. The trial court found that James held the marital home in trust for the benefit of Carmen and ordered him to reconvey the property. James appeals, contending that the evidence does not support the trial court's determination.

We affirm.

On October 17, 1974, a judgment for divorce was entered dissolving the Carlson's nine year marriage. Carmen was granted custody of their three children. The judgment incorporated a marital settlement agreement which provided that James was to convey to Carmen his undivided one-half interest in the marital home, which the parties held as joint tenants. Carmen waived any rights to alimony or maintenance. Thereafter, in May 1975, and in compliance with the judgment for divorce, James conveyed his interest to Carmen. Contemporaneously with that conveyance, Carmen reconveyed to James the entire interest in the marital home. The reason for the reconveyance from Carmen to James is the basis of the dispute on appeal.

In ruling on Carmen's petition, the trial court considered deposition testimony of the parties and of William Vlasek, one of the attorneys who represented James during the divorce proceedings. This evidence indicates that after the divorce was finalized, but prior to the conveyances in question, Arthur Mintz, an attorney who represented Carmen during part of the divorce proceedings, obtained a judgment against her for unpaid attorneys' fees in the amount of $546.48. On December 2, 1974, Mintz wrote Carmen threatening to place a lien against her property to secure satisfaction of the judgment.

Fearing that she would lose the marital home, Carmen sought the advice of James and his attorney. They told her that if the title to the home was not in her name, Mintz could not reach it. However, Vlasek warned her that if she put the home in James' name, her ex-husband could force her out of the house or raise the rent at any time. Carmen, who had hopes of reconciling with her ex-husband, did not believe that James would force her out of the home. Carmen, James and Vlasek also discussed the possibility of establishing a trust to shelter the home from Carmen's judgment creditor.

These discussions, which took place in Vlasek's office, culminated in the May 1975 conveyance of James' one-half interest to Carmen and the reconveyance of the entire interest from Carmen to James. No consideration was given for the reconveyance, and Carmen asserts that James agreed to reconvey the property to her whenever she asked. Since the

reconveyance, James has paid the mortgage payments with money he deducts from the child support allowance he is required to pay Carmen under the judgment for divorce. Carmen lives in the home and pays for all maintenance and repair.

On February 10, 1976, the Mintz judgment against Carmen was finally satisfied. Shortly thereafter, Carmen demanded that James reconvey the property to her, but he refused. Carmen then petitioned the court for reconveyance of the property.

OPINION

■■■ James contends the evidence does not support a finding that the parties intended to create a resulting trust for the benefit of Carmen. The applicable rules of law are well established. A resulting trust is created by operation of law from the presumed intent of the parties. (*Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435.) The intent of the parties is inferred from their conduct, relationship and surrounding circumstances. (*In re Estate of Waitkevich* (1975), 25 Ill. App. 3d 513, 323 N.E.2d 545.) In the most common situation involving real property, a resulting trust arises where the consideration for the purchase of the property is supplied by one party while title is taken in the name of another. *Craven v. Craven* (1950), 407 Ill. 252, 95 N.E.2d 489.

■■ The intent which will sustain the finding of a resulting trust must have existed at the time of the conveyance. (*First National Bank v. Dierking* (1967), 87 Ill. App. 2d 4, 230 N.E.2d 520.) The party seeking to establish the trust has the burden of proving its existence by clear, convincing and unmistakable evidence. (*Wright v. Wright* (1954), 2 Ill. 2d 246, 118 N.E.2d 280.) If the proof discloses that the parties did not intend the conveyance as a gift or advancement, equity will effectuate the intention of the parties by declaring a resulting trust. *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435; *Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, *cert. denied* (1974), 415 U.S. 948, 39 L. Ed. 2d 564, 94 S. Ct. 1470.

In addition to Carmen's assertion that James orally agreed to reconvey title to her on her request, the facts and circumstances surrounding the conveyance to James support a finding of a resulting trust in favor of Carmen. Carmen conveyed the interest in the marital home, to which she was legally entitled under the judgment for divorce, to James for no consideration. Thus, Carmen provided all of the consideration for the transaction. (*Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, *cert. denied* (1974), 415 U.S. 948, 39 L. Ed. 2d 564, 94 S. Ct. 1470.) The evidence reveals that the catalyst in the transaction was Carmen's fear that the family home could be sold to satisfy the judgment against her. The conveyance was made only after Mintz threatened to place a lien on her house to secure his judgment. It was her belief that by

transferring the property to James she could protect the family home. See *Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, *cert. denied* (1974), 415 U.S. 948, 39 L. Ed. 2d 564, 94 S. Ct. 1470.

James contends the evidence reasonably supports only two alternative conclusions: that the parties intended a trust for the benefit of their minor children or that the reconveyance was a gift to James of one-half interest in the home, the remainder to be held in trust for the benefit of the children. Carmen's deposition testimony evidences a strong concern for the well-being of her children, perhaps sharpened by the threatened judgment against her. However, the evidence does not indicate that Carmen at any time desired to relinquish all control over the property, only that she wished to protect the home until she could satisfy the judgment and get her financial affairs in order.

■■ Furthermore, there is no basis to conclude that Carmen intended to make a gift to James of one-half of the property. No presumption of a gift is raised by the conveyance to James. (See *Peek v. Peek* (1971), 131 Ill. App. 2d 1045, 268 N.E.2d 443; *In re Estate of Jarodsky* (1970), 122 Ill. App. 2d 243, 258 N.E.2d 365.) Carmen continued to occupy the home, pay for upkeep and improvements and, in fact, pay the mortgage, by deductions made by James from her child support payments. Notwithstanding Carmen's desire to reconcile with James, there is no indication that she intended to relinquish control or make an outright gift of the property to him. The record simply does not disclose an intent to confer upon James the beneficial interest in all or part of the property.

■■ ■ Because the evidence before the trial court consisted entirely of deposition testimony, we are not bound by the trial court's findings of fact and may make an independent evaluation of the sufficiency of the evidence. (See *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952.) We find the evidence of a resulting trust in favor of Carmen to be clear and convincing. Therefore, we affirm the trial court's order granting Carmen's petition for the return of the marital home.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.