**In re Bessie O'MALLEY, Debtor.**

**No. 95–B–12972.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 22, 1999.

Duane O'Malley, Centralia, IL, Pro Se.

Patricia Norum, c/o Barbara Dutton, Chicago Heights, IL, United States Trustee.

Daniel Hoseman, Max Chill & Steven R. Radtke, Chill, Chill & Radtke, P.C., Chicago, IL, for trustee.

## *MEMORANDUM OPINION*

JACK B. SCHMETTERER,
Bankruptcy Judge.

This proceeding relates to the bankruptcy case filed by Bessie O'Malley ("Debtor") on June 28, 1995 under Chapter 7 of the Bankruptcy Code, 11 U.S.C. 101 et seq. Duane O'Malley, ("O'Malley"), Debtor's husband, has filed a claim in the sum of $1,000,000. The claim is based in part on O'Malley's alleged right to real estate of which beneficial ownership was in Debtor's name and sold in part by her pre-bankruptcy and the rest sold by the chapter bankruptcy Trustee. O'Malley alleges that he was induced to transfer his half interest in that real estate to Debtor by the allegedly fraudulent actions of one or more individuals other than Debtor and that ownership of that interest should have been returned to him.

The Trustee objected to O'Malley's claim, arguing that he did not state a cause of action against the bankruptcy estate because the alleged fraudulent activities were by nondebtors, and because of inconsistencies in O'Malley's claim. For reasons stated below, Trustee's Objection to O'Malley's claim will be overruled in part and sustained in part. Read liberally this *pro se* claimant is considered to plead a claim for a possible resulting trust in property interest transferred to Debtor and sold in part by her and the balance by the Trustee. That possible claim might lie to the extent of half the net sale proceeds of each such sale, as unsecured claim for the pre-petition sale and a secured claim after administrative expenses for the sale out of bankruptcy.

### History of Property Transfer of Record and Pleaded by O'Malley

The following history appears from filings of the parties.

At all times mentioned here, Debtor was married to O'Malley. On or about January 28, 1986, O'Malley and Debtor purchased in joint tenancy five acres of undeveloped real estate in Orland Park, Illinois. This property was later subdivided into ten lots and became known as the Whispering Pines Subdivision.

On or about July 2, 1987, Debtor and O'Malley conveyed title to that property into Land Trust No. L–1639 at Harris Bank of Hinsdale. Under terms of the Land Trust Agreement, Debtor and O'Malley were owners of 100% of the beneficial interest in that trust as joint tenants. Harris Bank accepted the conveyance into the trust and executed the Land Trust Agreement.

On April 12, 1993, O'Malley was convicted of a crime in the Circuit Court of Cook County, Illinois and incarcerated. On or about July 15, 1993 he signed an amendment to Land Trust No. L–1639 ("Amendment to Land Trust") making Debtor owner of 100% of the beneficial interest in the Whispering Pines Subdivision. As more fully discussed below, he alleges that he did this to enable her to post the real estate as a bond pending appeal to secure his release from prison if such bond were set by the Court, so as to make that step immediately possible even if he were locked up and unavailable to sign papers. Harris Bank appears to have accepted that Amendment to the Land Trust.

O'Malley alleges and argues that the sole purpose for his signing the Amendment to the Land Trust to change Debtor's beneficiary interest to 100% was to enable the obtaining of a bond pending appeal in his criminal case, on his understanding based on representations of persons who induced his signature that if bond pending appeal were to be denied the Amendment to Land Trust was to become void.

Transcripts from the bond hearing appended by O'Malley to his claim and his pleadings reveal that his attorney proposed to the state criminal court judge to assign interest in real estate to the Clerk of the Circuit Court as security for his bond. O'Malley alleges that his counsel represented to him that if he transferred his beneficial interest to Debtor's name, should appeal bond be granted while he was incarcerated, the transfer of real estate interest to the Clerk of the Circuit Court to secure the bond would be completed more expeditiously by his wife on her sole signature. In that way, there would be no need for O'Malley's signature which would be complicated by his incarceration. O'Malley's counsel allegedly told him that this would alleviate time and efforts to mail documents to O'Malley in the state prison in downstate Illinois where he was located. The criminal court judge denied O'Malley's request for bond pending appeal on May 10, 1993 and again on June 6, 1993. Those decisions were appealed to the Illinois Appellate Court on July 30, 1993 (after O'Malley had transferred the entire beneficial trust interest to his wife) and O'Malley's appeal to set bond was denied by the latter court on August 2, 1993. However, his beneficial interest was not restored to his name; the entire interest continued to be held in his wife's name.

Debtor allegedly sold six lots out of the Whispering Pines Subdivision after transfer to her of O'Malley's interest and prior to her filing in bankruptcy. When Debtor filed for bankruptcy relief on June 28, 1995, that part of Whispering Pines Subdivision still in the Land Trust of which she was still sole beneficiary of record, was included as property of her bankruptcy estate. The Trustee, in the administration of the estate and pursuant to orders of this Court, sold the remaining four lots of Whispering Pines Subdivision over O'Malley's objections.

O'Malley filed his Claim # 014 as a secured claim in the amount of $1,000,000. Trustee filed his objection thereto arguing that the claim was filed late and was defective on its face and the claim failed to state a cause of action against Debtor's estate. O'Malley filed a Response to Trustee's Objection. After initial consideration of the claim and objection, an order was entered directing O'Malley to supplement his claim for fraud with specificity on the understanding that he was asserting a fraud claim against Debtor. O'Malley filed his Supplement to his Claim # 014 pursuant to that Order, stating in part that he did not accuse Debtor of fraud. Trustee filed his reply thereto, again urging that O'Malley has not stated a cause of action for fraud recoverable from Debtor's estate; that O'Malley's claim is internally inconsistent; and that any claim for fraud which O'Malley may have is against nondebtors.

■ O'Malley asserts that he did not give his consent for his wife to file bankruptcy. However, she did not file a joint case under 11 U.S.C. § 302, which would have required O'Malley's consent because a joint petition must be voluntary and jointly consensual. 2 Collier on Bankruptcy ¶ 302.02 (15th ed. rev.1999). One spouse cannot take the other into a case under Title 11 U.S.C. without the other's knowledge and consent, but this Debtor filed an individual bankruptcy petition. Therefore, O'Malley's complaint to the effect that his consent was required for his wife to file in bankruptcy is without any possible merit.

In addition, O'Malley has made many allegations of conspiracy and fraud by various individuals apart from that relating to transfer of his property interest. He alleges that all claims filed by a creditor named Randy Crosson or his company Industrial Fire Protection Inc. were based on his fraud. The Trustee objected to every claim filed by Randy Crosson and none of those claims were allowed. Therefore, O'Malley's allegation concerning those claims is moot.

O'Malley also contends that his previous attorney Alan Bernstein breached his fiduciary duty to him. He further asserts that he was defrauded by his retained attorney Edward Krzyminski, who allegedly caused him to sign the Amendment to Land Trust and allegedly collected $10,000 improperly after his wife's sale of real estate prebankruptcy. O'Malley also tries to allege fraudulent activity on the part of his attorney Lawrence Levin who represented him in his criminal matter concerning the bond pending appeal for allegedly promising O'Malley that he would be granted bond pending appeal, and for collecting a fee of $10,000. O'Malley alleges that Harris Bank and Southwest Financial Bank breached their fiduciary duty to O'Malley by failing to verify O'Malley's signature on the assignment or authenticate documentation for its certification. (While claiming that he did sign the papers because of certain promises, the latter contention infers a contradictory suggestion that he did not sign the papers.) As discussed below, however, this Court does not have jurisdiction over O'Malley's claims against nondebtors and his conduct by others does not give rise to a claim against the estate unless it is related to the possibility of resulting trust discussed below.

### *JURISDICTION*

Jurisdiction lies under 28 U.S.C. § 1334 and the case has been referred here under The District Court Internal Operating Procedure 15(a) U.S.D.C., N.D. Ill., effective September 1, 1999. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue lies under 28 U.S.C. § 1409.

### DISCUSSION

#### *O'Malley's Pleading by Filing of a Claim*

■ A filed claim in bankruptcy is prima facie evidence of the validity of that claim. Fed. R. Bankr.P. 3001(f). The burden is on the objecting party to rebut

the prima facie allowability of the claim. *In re Missionary Baptist Foundation of Am.*, 818 F.2d 1135, 1143 (5th Cir.1987). Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable. *In re Chapman*, 132 B.R. 132, 143 (Bankr.N.D.Ill.1991). While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

Here, Trustee essentially argues that O'Malley's proof of claim and facts stated therein states no possible cause of action or claim that might allow recovery from Debtor's estate.

■ A proof of claim is somewhat analogous to a complaint in a civil action. *See Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir.1995); *In re Continental Airlines*, 928 F.2d 127, 129 (5th Cir.1991); *Katchen v. Landy*, 336 F.2d 535, 536 (10th Cir. 1964); *Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir.1962). Under federal "notice" pleading requirements, pleadings need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Notice" pleading merely requires that the plaintiff give notice to the defendant of the theory behind claims alleged and the basic facts supporting those allegations. *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980). Federal pleadings should therefore be liberally construed. *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 653 (7th Cir.1984). As long as fair notice has been given and the court can glean an actionable claim from the complaint, the court must entertain the party's case. *See American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986). A complaint under Rule 8 limns the claim, with details of both fact and law to come later in other documents. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073,

1078 (7th Cir.1992). Thus, a suit should not be dismissed unless there is no set of facts under any theory of which notice is given that might justify possible relief.

■ When a party alleges fraudulent activity in its federal pleadings, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). Rule 9(b) should nevertheless still be read in conjunction with Rule 8(a). *People v. Volpert (In re Volpert)*, 175 B.R. 247, 258 (Bankr.N.D.Ill.1994). When alleging fraud in a complaint, it is necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations, and the time and place the misrepresentations were made. *Vicom v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994). Mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b). *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir.1990). However, for reasons stated below, this Court lacks jurisdiction to consider fraud claims against nondebtor individuals, and so no analysis of the "fraud" allegations need be made under the foregoing standards.

■ A claim in a bankruptcy need not meet the foregoing tests of litigation pleading under the Federal Rules of Civil Procedure. A claim need only "provide adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir.1997), cert. denied U.S. 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997); *Unioil, Inc. v. H.E. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 992 (10th Cir.1992).

■ Moreover, pleadings by pro se litigants must be read liberally and held to less stringent standards than those applied to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Swofford v. Mandrell*, 969 F.2d 547 (7th Cir.1992).

While a judge is not to become an advocate for a pro se litigant, *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir.1996), the court does have a duty to "take appropriate measures that will permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds." *Id.* It is a court's obligation to ensure that the claims of a pro se litigant are given "a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987).

### The Possible Claim of Resulting Trust

Although never stated by O'Malley as a legal theory for recovery, from the facts pleaded by him, it appears that he is alleging what the law calls a resulting trust as a basis for his claim.

A resulting trust is created by operation of law. *Hall v. Eaton*, 258 Ill. App.3d 893, 898, 197 Ill.Dec. 611, 616, 631 N.E.2d 833, 838 (4th Dist.1994). Such a trust is exempt from the operation of the Statute of Frauds. 740 ILCS 80/9; *Kohlhaas v. Smith*, 408 Ill. 535, 97 N.E.2d 774 (1951). The most common situation wherein a resulting trust is found involves land. *Carlson v. Carlson*, 74 Ill.App.3d 673, 30 Ill.Dec. 607, 393 N.E.2d 643 (1st Dist.1979). A classic example is where consideration for purchase of the property is supplied by one party while title is taken in the name of another who holds title in trust for the real purchaser. *Id.* Whether a resulting trust arises depends on intention of the person furnishing the conveyance. *In re Estate of Koch*, 297 Ill. App.3d 786, 232 Ill.Dec. 189, 697 N.E.2d 931 (3rd Dist.1998). The party claiming a resulting trust must establish its existence by clear and convincing evidence. *American Nat'l Bank & Trust Co. v. U.S.*, 832 F.2d 1032, 1035 (7th Cir.1987). The theory of a resulting trust is founded upon the natural equity that one who pays for the property should enjoy it, unless he or she intended by vesting of title to confer a beneficial interest upon the grantee. *Treschak v.*

*Yorkville Nat'l Bank*, 237 Ill.App.3d 855, 856, 178 Ill.Dec. 558, 560, 604 N.E.2d 1081, 1083 (3rd Dist.1992).

The payment of consideration for property by one who causes conveyance to another raises a prima facie presumption of a resulting trust which may be rebutted by proof of an intention that the grantee take a beneficial interest and not merely legal title. *In re Estate of Wilson*, 81 Ill.2d 349, 356, 43 Ill.Dec. 23, 27, 410 N.E.2d 23, 27 (1980). Intention of the party who paid consideration and transferred property must be gathered from the facts and circumstances of each individual case. *Id.*

Certain rebuttable presumptions concerning resulting trust have evolved based on relationship of the parties, and one of those is directly applicable here. Where a husband purchases or acquires property and title is conveyed to his spouse, a rebuttable presumption of a gift to the spouse arises which will negate a resulting trust. *Estate of Wilson*, 81 Ill.2d at 356, 43 Ill.Dec. at 27, 410 N.E.2d at 27. Where the presumption of a gift arises, it then devolves upon the one questioning the transfer to overcome that presumption by clear and convincing evidence. *Id.* If evidence discloses that it was not intended by the parties that the conveyance was to be deemed a gift, equity will effectuate the intention of the parties by declaring a resulting trust. *Carlson*, 74 Ill.App.3d at 675, 393 N.E.2d at 645, 30 Ill.Dec. at 609.

Intention is therefore the key to deciding whether the doctrine of resulting trust applies. The intention of O'Malley and others regarding transfer of his interest in Whispering Pines Subdivison are issues of fact that need to be determined by a hearing.

O'Malley alleges, in effect, that he conveyed his half interest as joint tenant in the subject real estate to Debtor for no consideration. As such, O'Malley pleads that he gave up something of value. The

incurring of a detriment can constitute consideration. *American Nat'l Bank & Trust Co. v. U.S.*, 832 F.2d 1032, 1035 (7th Cir.1987). Thus, by giving up his interest in the property (and assuming that he originally paid for his half interest), O'Malley may have furnished consideration for the conveyance of his half interest. *Harnois v. Harnois*, 10 Ill.App.3d 1062, 295 N.E.2d 511. *cert. denied* 415 U.S. 948, 94 S.Ct. 1470, 39 L.Ed.2d 564. Under the liberal pleading requirements in federal court litigation outside of bankruptcy, it could be gleaned that O'Malley has set forth sufficient facts to state a cause of action based on resulting trust against the bankruptcy estate of his spouse. Moreover, in light of minimal pleading requirements for a bankruptcy claim, he has certainly given notice of his possible claim under that theory.

Of course, as shown by authority cited earlier, the transfer by O'Malley to his wife gives rise to a rebuttable presumption of a gift to her, a presumption he must overcome by evidence.

### O'Malley's Claims Against Third Parties

■ O'Malley asserts that he was defrauded by numerous individuals, all non-debtors, not by his wife Bessie O'Malley, the Debtor. (There is another possible contradiction here: (1) If she did not participate in the alleged "fraud", why didn't she transfer back his interest? (2) Since she did not perform a fraud and he made no claim against her personally pre-bankruptcy, does that indicate a gift intended by him to her? These interesting questions must be answered at trial, but do not warrant dismissal.) However, none of the allegations against nondebtors state a claim against the bankruptcy estate of Debtor. As discussed below, this Court has no jurisdiction over those claims.

The source of federal jurisdiction over bankruptcy matters is 28 U.S.C. § 1334. That provision grants district courts jurisdiction over bankruptcy cases and proceedings arising in or under Title 11 U.S.C., or related to a bankruptcy case. 28 U.S.C. § 1334. The District Judges' bankruptcy authority may be delegated to Bankruptcy Judges under 28 U.S.C. § 157. In the Northern District of Illinois, the District Court has provided for such referral to Bankruptcy Judges under Internal Operating Procedure 15(a).

Section 157 does not give bankruptcy judges full judicial power over all matters in which the district courts have jurisdiction under § 1334. With respect to proceedings other than the bankruptcy petition itself, § 157 allocates the jurisdiction created by § 1334 between "core" and "non-core" proceedings. Bankruptcy judges have authority to hear and determine core proceedings "arising under" Title 11 U.S.C. or "arising in" a case under Title 11, and have limited authority to hear and recommend disposition as to non-core proceedings "otherwise related to a case" under Title 11.

■ A proceeding "arises in" Title 11 if it encompasses administrative matters that arise only in bankruptcy cases, those being matters based on any issue created by Title 11, but without existence outside of bankruptcy. *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir.1995); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir.1991); *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987).

■ A proceeding "arises under" Title 11 if it invokes a "substantive right" provided by Title 11, *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990), that is if a cause of action is "created or determined" by a statutory provision under Title 11. *Harris Pine*, 44 F.3d at 1435; *Wolverine*, 930 F.2d at 1144; *Wood*, 825 F.2d at 96.

■ A non-core proceeding "relates to" a case under Title 11 if the claim "affects the amount of property available for distribution or the allocation of property among creditors." *Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir.1991); *Barnett*, 909 F.2d at 981.

Clearly, O'Malley's personal claims against the several nondebtor individuals mentioned by him do not fall under this Court's "arising in", "arising under" or "related to" jurisdiction. Nor do those claims involve administrative matters or substantive rights that only occur inside bankruptcy, or affect the amount of property available for distribution in Debtor's case. Any claims of fraud by O'Malley against nondebtors are therefore not within the jurisdiction of this Court to entertain and will be dismissed for lack of jurisdiction.

### CONCLUSION

For the foregoing reasons, Trustee's Objection to O'Malley's Claim # 014 regarding the transfer of his beneficial interest to his wife is overruled as to that part of O'Malley's contention supporting a possible resulting trust over the Debtor's beneficial interest in real estate that was sold in part by her pre-bankruptcy and in part by the Chapter 7 Trustee. If such be proven, O'Malley might be found to have a secured claim in net proceeds of the Trustee's sale after administrative expenses, and a general unsecured claim by reason of the interest sold pre-bankruptcy by Debtor.

However, that part of the Trustee's objection regarding O'Malley's fraud claims against nondebtors is sustained and all claims against nondebtors are dismissed for lack of jurisdiction.